UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIK MORGAN,

Plaintiff,

v.

LVNV FUNDING, LLC,

Defendant.

Case No. 21-12967
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING IN PART LVNV'S MOTION FOR SUMMARY JUDGMENT [46], DENYING MORGAN'S MOTION FOR SUMMARY JUDGMENT [45], AND DENYING LVNV'S MOTION TO STRIKE [50]**

Erik Morgan had a credit card with Credit One Bank that he did not fully pay off. (ECF No. 45-7, PageID.617, 620.) The credit card account was eventually transferred to LVNV Funding, LLC and serviced by Resurgent Capital Services. (ECF No. 45-7, PageID.66; ECF No. 45-4, PageID.452.) After receiving a dispute letter from Morgan, Resurgent reported the LVNV account as disputed. (ECF No. 45-4, PageID.491.)

On October 1, 2021, Credit Repair Lawyers of America sent LVNV a letter stating, "[m]y firm represents Erik Morgan. . . . Erik Morgan has reviewed the credit disclosure and has discovered the following inaccurate information in the credit file: Our client no longer disputes LVNV Funding LLC, Original Creditor: Credit One Bank NA, Balance: $1,706, Date of Opening: July 2019. Please remove the dispute comment from the account." (ECF No. 45-8, PageID.758.) LVNV admitted that

Resurgent "is expected to have knowledge that 'Plaintiff's Consumer Dispute,' dated on or about October 1, 2021 . . . was received by LVNV's Master Services, Resurgent Capital Services, LP . . . [Resurgent] investigated that dispute and followed the requirement in 15 U.S.C. § 1692e(8) by keeping the 'disputed' notation." (ECF No. 45-9, PageID.761; *see also* ECF No. 45-4, PageID.501.)

Morgan believes that LVNV's failure to remove the dispute comment—despite the letter requesting it do so—violates the Fair Debt Collection Practices Act. Specifically, he complains that LVNV violated the Act by falsely representing "the character, amount, or legal status of any debt" in violation of 15 U.S.C. § 1692e(2)(A), and by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed" in violation of 15 U.S.C. § 1692e(8). So he sued LVNV for these violations of the FDCPA, as well as for violations of the Michigan Occupational Code and the Michigan Collection Practices Act. (*See generally* ECF No. 1.)

After discovery, the parties filed cross-motions for summary judgment. (ECF Nos. 45, 46.) The Court considers these motions separately. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). Because the Court finds that Morgan lacks standing for his FDCPA claim, it will grant in part LVNV's motion for summary judgment and deny Morgan's motion for summary judgment. It will also deny LVNV's motion to strike.

**I.**

The Court begins, as it must, with its subject-matter jurisdiction. *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.").

One of the essential requirements of subject-matter jurisdiction is standing. The Court is "obligated to address a party's lack of standing even if the parties fail to raise the issue on their own." *Langfan v. Goodyear Tire & Rubber Co.*, 529 F. App'x 460, 462 (6th Cir. 2013); *see also Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 250 (6th Cir. 2020). However, here, LVNV raised Morgan's lack of standing as part of its motion for summary judgment and in response to his motion for summary judgment. (*See* ECF No. 46, PageID.796; ECF No. 49, PageID.854.)

To establish standing, a plaintiff must show three things: one, "an injury in fact that is concrete, particularized, and actual or imminent;" two, that "the injury was likely caused by the defendant;" and three, that "the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "As the party invoking federal jurisdiction," Morgan bears "the burden of demonstrating that [he has] standing." *Id.* at 2207–08 (citing *Lujan*, 504 U.S. at 561). And he must do so in "the manner and [with the] degree of evidence required at the successive stages of the litigation." *Id.* at 2208. Thus, as this case is at summary judgment, Morgan "can no longer rest on . . . mere allegations" and must set forth evidence of specific facts that support standing. *See Lujan*, 504 U.S. at 561.

The Court's jurisdiction in this case is based on Morgan's claim under the Fair Debt Collection Practices Act. (*See* ECF No. 1, PageID.4–8 (alleging claims under the FDCPA and two Michigan state statutes).) And as the Supreme Court has stated, "standing is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion*, 141 S. Ct. at 2208. Thus, the Court will focus on whether Morgan has established standing in relation to his FDCPA claim.

**A. Injury in Fact**

The Court begins by assessing whether Morgan has shown an injury in fact.

Again, Article III standing requires an injury that is concrete, particularized, and actual or imminent. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs.*, 528 U.S. 167, 180–81 (2000); *Lujan*, 504 U.S. at 560–61. The Supreme Court recently made clear that "Congress may create causes of action for plaintiffs to sue defendants who violate [certain] legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id.* at 2205. In other words, Article III does not

permit a plaintiff to bring a lawsuit in order to "ensure a defendant's compliance with regulatory law," including the FDCPA. *Id.* at 2206 (internal quotations omitted).

Thus, to satisfy the standing requirements of Article III as to his FDCPA claim, Morgan "must show either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury." *Ward v. NPAS, Inc.*, 63 F.4th 576, 580 (6th Cir. 2023) (citations omitted). Intangible harms may be concrete, but "[t]he Supreme Court has counseled that 'chief among' these intangible concrete harms 'are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts[.]'" *Id.* (citing *TransUnion*, 141 S. Ct. at 2204).

Throughout the course of the briefing, Morgan appears to be taking both approaches—that the procedural violation caused an independent, concrete harm and that the procedural harm itself is of the sort traditionally recognized as providing a basis for a lawsuit. So the Court will address each argument in turn.

**1. Independent Concrete Harm**

Morgan first argues that he has suffered emotional harm as a result of LVNV's failure to change the dispute notation. (ECF No. 48, PageID.834–835.) In support, he cites a portion of his deposition transcript, where his lawyer asked him to describe his financial damages. (ECF No. 45-7, PageID.746.) Morgan responds, "As I expressed to [defense counsel], not being able to put money back into my business now that the pandemic has subsided. Get back to earning the amounts of money, the income that I mentioned earlier. That's one of the things. Some of the other damages are

emotionally, physically. It's just draining, stressful." (*Id.*) Morgan also cites his declaration, where he states "[a]s a result of Defendant's failure to remove the dispute comment, I have suffered from anxiety, embarrassment, humiliation, and stress." (ECF No. 45-6, PageID.523.)

As an initial matter, in a separate motion to strike, LVNV urges the Court to disregard Morgan's declaration because the statement concerning his emotional distress is "self-serving . . . [and] purely conclusory and insufficient to establish emotional distress." (ECF No. 50, PageID.884.) The Court is certainly skeptical of such a declaration, which was created after Morgan's deposition and signed the day the parties moved for summary judgment. (*See* ECF No. 45-6, PageID.523.) That is especially true given that Morgan was asked multiple times about his injuries in his deposition, and yet failed to say what he did in the declaration—that LVNV's failure to remove the dispute comment has caused him anxiety, embarrassment, humiliation, and stress. (*See* ECF No. 45-7, PageID.716 ("[I]t is embarrassing when I go into my own bank and I don't qualify for anything."); *id.* at PageID.718 ("I believe the damages are monetary damages. Monetary damage and loss from not being able to start a business, start my business back to rolling. The stress. The anxiety. It's a lot."); *id.* at PageID.701 ("I believe everything that's listed on the credit report has played a role in my not being able to obtain certain loans[.]"); *id.* at PageID.714 ("Q. I just want to know the damages that you think are the fault of LVNV Funding, LLC. What damages did they cause? That's what I want to know. A. I don't fault LVNV at

all. There's no fault. It's just me trying to move forward and getting on the right track.").)

Nevertheless, to exclude a declaration at summary judgment as a "sham declaration," the declaration must "directly contradict[] the nonmoving party's prior sworn testimony." *Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 976 (6th Cir. 2019) (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)). Here, Morgan testified that he believes his damages include stress and anxiety. (ECF No. 45-7, PageID.718, 746.) That statement is generally consistent with the statement in his declaration, even if the declaration is more detailed. So the Court will not strike or disregard Morgan's statement in his declaration regarding his emotional damages.

But even when considering Morgan's declaration along with his deposition testimony, he has failed to show a concrete injury.

Morgan's statements are nothing more than "bare" assertions of emotional distress. (*See* ECF No. 45-7, PageID.718 ("I believe the damages are monetary damages. . . . The stress. The anxiety. It's a lot."); *id.* at PageID.746 ("Some of the other damages are emotionally, physical. It's just draining, stressful."); ECF No. 45-6, PageID.523 ("As a result of Defendant's failure to remove the dispute comment, I have suffered from anxiety, embarrassment, humiliation, and stress.").) And the Sixth Circuit has clearly stated that "a bare allegation of anxiety is not a cognizable, concrete injury." *Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021). True, Morgan provided his statements in the form of testimony and a sworn declaration.

But merely providing the statement in a form that is admissible at summary judgment does not make it anything more than a bare assertion of anxiety, which *Garland* found insufficient.

Indeed, the *Garland* court explained that such a statement of anxiety is "an intangible harm *without* a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." 999 F.3d at 439. "Anxiety—a form of emotional harm—comes in many different shapes and sizes," the Court continued, "and so a bare allegation of anxiety doesn't tell us much. Some forms of anxiety or emotional harm are cognizable under the common law, but others are not. And this distinction appears to turn on both the defendant's conduct giving rise to the anxiety and the anxiety's severity." *Id.* Like the allegation of anxiety in *Garland*, Morgan's testimony and declaration also say "nothing about severity." *Id.* at 440. Likewise, LVNV's failure to remove the dispute remark certainly does not approach the "small slice of human behavior" that constitutes extreme and outrageous conduct. *See id.*

And the Sixth Circuit is not alone in this conclusion. In a remarkably similar case, *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021), the Seventh Circuit dismissed for lack of standing. There, Wadsworth testified that "she got less sleep and felt intimidated, worried, and embarrassed." *Id.* at 668. The Seventh Circuit noted that "[i]ndeed, Wadsworth's own attorney asked her about the 'specific types of injuries' caused by [defendant's] letter, to which Wadsworth merely replied: 'Stress, anxiety.'" *Id.* The Seventh Circuit went on to conclude that "[a]s our bevy of recent decisions on FDCPA standing makes clear, anxiety and

embarrassment are not injuries in fact. Indeed, we have expressly rejected 'stress' as constituting concrete injury following an FDCPA violation. . . . These are quintessential abstract harms that are beyond our power to remedy. The same is true of the stress and embarrassment that Wadsworth complains of in this case." *Id.* at 668–69. Similarly, the Second Circuit stated that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *See Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2d Cir. 2021).

Resisting this, Morgan relies on *Magruder v. Capital One, Nat'l Ass'n*, 540 F. Supp. 3d 1 (D.D.C 2021) to support his argument that emotional harm is a concrete injury. But the *Magruder* court was very clear that its ruling was limited to the pleading stage: "It bears emphasis, however, that Magruder has only barely cleared the standing hurdle at the pleading stage and that establishing standing at summary judgment is considerably more demanding than it is here. . . . At that point in the litigation, Magruder will need to be far more specific about the alleged injuries; he will need to offer proof that he actually sustained (or will soon sustain) those injuries; and he will need to offer evidence that the alleged FDCPA and FCRA violations caused those injuries." *Id.* at 14. To the extent Morgan relies on *Magruder* for the general proposition that emotional harm can be a concrete injury, the Court agrees. But there is a difference between a "bare" statement of emotional harm devoid of any supporting facts and an assertion of emotional harm that is supported by specific factual details. Thus, the Court declines to extend *Magruder*'s conclusion to the

summary-judgment stage as Morgan has not provided details regarding the nature or severity of the anxiety and stress he suffered.

Accordingly, the Court finds that Morgan has not provided sufficient evidence at summary judgment that his anxiety and stress are concrete injuries that establish standing.

**2. Traditional Harm**

In reply to his own motion, Morgan also asserts that the procedural violation at issue here is "closely analogous to the harm traditionally regarded as providing the basis for libel and slander claims in English and American courts." (ECF No. 51, PageID.889.)[1] He relies on the Supreme Court's opinion in *TransUnion* and the Seventh Circuit's opinion in *Ewing v. MED-1 Solutions, L.L.C.*, both of which found standing for statutory violations based on their relation to common-law defamation. But because Morgan's claim is distinguishable from the claims in both of those cases, he cannot rely on defamation to establish standing.

[1] The Court notes that it is typically improper to raise a new argument in reply as it deprives the opposing side of an opportunity to respond. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived."); *see also Stephens v. Nat'l City Corp.*, No. 20-3746, 2021 WL 3027864, at *3 (6th Cir. June 14, 2021). This remains true here. Though LVNV raised standing in response to Morgan's motion for summary judgment, it also raised standing in the opening brief for its own motion for summary judgment. (*See generally* ECF Nos. 46, 49.) And Morgan responded to LVNV's motion on May 4, 2023, arguing that his emotional injuries suffice for standing purposes. Morgan offers no explanation why he did not also assert his common-law arguments at that time, and instead, waited until his reply brief, which was filed on May 11. Regardless, because this argument does not change the outcome of the opinion, the Court will consider it.

Start with *TransUnion*. The Supreme Court found that the plaintiffs asserted injury—that their credit reports had been published to a third party bearing a misleading Office of Foreign Assets Control (OFAC) alert—resembled the sort of "reputational harm associated with the tort of defamation." *TransUnion*, 141 S. Ct. at 2208. Specifically, the Court found that American law has stood for the proposition that an individual is injured "when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party." *Id.* (citations omitted). As TransUnion had published credit reports that "labeled the class members as potential terrorists, drug traffickers, or serious criminals," the Court found that plaintiffs suffered a harm akin to the harm of defamation. *Id.* at 2209.

Putting aside for now the defamation requirement of publication, Morgan still cannot satisfy the standard set out in *TransUnion*. Namely, he has not shown that LVNV's failure to remove the dispute remark from his account would have any effect on his "reputation." He has not explained what sort of "hatred, contempt, or ridicule" he would face as a result of the erroneous dispute comment. *See also* Restatement (Second) of Torts § 559 ("A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."). For example, Morgan has not shown that creditors or other individuals who would see the dispute remark would act any differently towards him because of it. And he also has not shown that the credit reporting agencies—who LVNV reports to—lowered his credit score, held him in lower "estimation," or penalized him in any way because they believed he still

disputed the account when he actually did not. If anything, it seems like removing the dispute comment—and thereby implicitly acknowledging the unpaid debt—would cause reputational harm, rather than alleviate it. *See Saunders v. Branch Banking And Tr. Co. Of VA*, 526 F.3d 142, 150 (4th Cir. 2008) ("Certainly, if a consumer has a meritorious dispute—as the jury concluded Saunders did here—the consumer's failure to pay the debt does not reflect financial irresponsibility.").

Instead, Morgan merely argues that *TransUnion* "provides strong support for the view that a false statement about a consumer made by a debt collector to a credit bureau is also a concrete injury in and of itself." (ECF No. 51, PageID.889.) But the Court does not read *TransUnion* to go that far. The Supreme Court did not hold that any false statement on a credit report—merely because it is false—results in a concrete injury. Indeed, such a holding would contradict the Court's reasoning in *Spokeo Inc. v. Robins*, 578 U.S. 330, 342 (2016), where it noted, "not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." Instead, the *TransUnion* court found that "[t]he harm from being labeled a 'potential terrorist'" bears a close relationship to the harm resulting from a false or defamatory statement. *TransUnion*, 141 S. Ct. at 2209. There, the negative reputational ramifications from such a statement are clear. Here, it is not so clear, and thus, the Court requires more explanation from Morgan—especially at this stage of the litigation.

Turning back to publication, Morgan argues for a broad interpretation of *TransUnion*. The *TransUnion* court distinguished class members "whose reports were disseminated to third parties" from class members whose information was not provided "to any potential creditors during the class period[.]" *TransUnion*, 141 S. Ct. at 2209 ("Publication is 'essential to liability' in a suit for defamation." (quoting Restatement of Torts § 577, cmt. a)). While individuals in the first group had standing, those in the second group—some of whom may not have even known about the OFAC alert on their credit report—did not have a concrete injury. *Id.* at 2212.

However, Morgan argues that *TransUnion* only requires dissemination of the false information to some other party—not that it requires that the false information be disseminated to creditors specifically. Thus, in this case, says Morgan, it was sufficient that LVNV reported the account as disputed to the credit reporting agencies, regardless of whether a creditor actually learned of that information or not. (ECF No. 51, PageID.890.) Fair enough. This Court sees no reason why publication in this context would require showing publication to creditors. *See Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153 (7th Cir. 2022) ("If the Consumers' harm is analogous to defamation, then they must demonstrate that the Debt Collectors disseminated false information about them to a third party. The Consumers do not have to make a further showing that the third party *also* shared that false information.").

But Morgan's reliance on *Ewing* only gets him so far. The *Ewing* court found that the plaintiffs had suffered an "intangible, reputational injury" where Defendants failed to communicate her dispute of certain accounts to the credit-reporting agencies.

24 F.4th at 1149–1151. In other words, it is the opposite situation to Morgan's, where he asked LVNV to *remove* the dispute comment. As such, when determining whether plaintiffs had alleged an injury sufficiently analogous to defamation, the Seventh Circuit focused on the publication element of defamation. But the publication holding in *Ewing* does nothing to further Morgan's argument that LVNV's failure to remove a dispute comment is similar to publishing a *defamatory* statement. And in *Ewing*, the Seventh Circuit specifically concluded that plaintiffs "have shown that their injury is related closely to the harm caused by defamation. Reputational harm of this sort is a real-world injury; being portrayed as a deadbeat who does not pay her debts has real-world consequences." *Ewing*, 24 F.4th at 1154. Again, the Court reiterates that the reputational harm to Morgan is not so clear where he asks for a dispute comment to be removed, especially considering that, per the reasoning in *Ewing*, disputing an account seems to signify something better than not disputing an account and not paying it.

In sum, because Morgan has not shown that the false statement LVNV made to the credit reporting agencies is similar to a defamatory statement, the Court finds that his injury is not sufficiently analogous to the harm associated with defamation. Thus, Morgan has not shown that the procedural violation itself is a concrete injury.

**B. Traceability**

Apart from not establishing a concrete harm, Morgan has not shown that his alleged injuries are attributable to LVNV's conduct.

As a reminder, Morgan's only issue with LVNV's conduct is that it failed to communicate to the credit reporting agencies that Morgan no longer disputed his debt. (*See* ECF No. 45, PageID.418–419 ("This case involves the removal of a dispute remark rather than the addition of a dispute remark . . . . Upon receipt of Plaintiff's letter, Defendant was required to remove the dispute remark from its collection item. By failing to do so, Defendant violated 15 U.S.C. § 1692e(8) of the FDCPA.").) Thus, only injuries "fairly traceable" to that "challenged action" establish standing. *See Garland*, 999 F.3d at 440.

Morgan offers very little to show that his anxiety, stress, and embarrassment are due to LVNV's failure to remove the dispute remark. The only clear statement of this is in Morgan's post-deposition declaration, where he says, "[a]s a result of Defendant's failure to remove the dispute comment, I have suffered from anxiety, embarrassment, humiliation, and stress." (ECF No. 45-6, PageID.523.) But Morgan does not explain what about the dispute comment remaining on the report is causing him stress and why the failure to remove the dispute comment resulted in his emotional distress. *See Brooks v. Receivables Performance Mgmt. LLC*, No. 321CV00579, 2023 WL 4228984, at *4 (W.D.N.C. June 27, 2023) ("But Brooks offers no reason why RPM's letter—on its own—would cause that worry or its attendant stress and sleeplessness. RPM's letter did not create Brooks's debt to AT&T."); *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 464 (8th Cir. 2022) ("Moreover, to establish Article III standing, Ojogwu has the burden to demonstrate a concrete injury *caused by* the defendant. Here, Ojogwu, who had avoided paying this debt for

more than ten years, made no showing that his alleged 'negative emotions' were caused by Rodenburg commencing a lawful garnishment proceeding.").

And because the "challenged action" in this case is so cabined, Morgan must offer some explanation showing that he "suffers a concrete harm that he wouldn't have incurred had the debt collector complied with the Act." *See Wadsworth*, 12 F.4th at 668. Morgan has not done so. Indeed, his deposition testimony is unclear as to what is causing him stress and anxiety. He states, "[i]t's just draining, stressful," without clarifying whether the "it" is his inability to "put money back into my business . . . [and] get back to earning the amounts of money, the income that [he] mentioned earlier"—which he discusses in the previous sentence—or if "it" means the dispute comment. (*See* ECF No. 45-7, PageID.746.)

Further, Morgan's testimony on the whole leads to the reasonable inference that it is *not* the failure to remove the dispute remark that is causing his stress, but rather his general financial woes. (ECF No. 45-7, PageID.716 ("[H]owever, it is embarrassing when I go into my own bank and I don't qualify for anything. And like I said, there was hundreds of thousands of dollars being made and there's nothing that I can do about it."); *id.* at PageID.730 ("My whole credit report as a whole, whatever's listed on that credit report, from top to bottom, has played a role in me not being able to survive in the market."); *id.* at PageID.713 (stating he is not eligible for conventional mortgage financing "due to my credit score. Things that are reading off my credit report."); *id.* at PageID.541 ("Q. What event occurred in the last week that caused you stress? A. Dealing with my financial situation. Dealing with what

comes with that; late payments, late bills, things o[f] that nature. Trying to figure out how to maintain and move forward. That's a big stress on me."); *id.* at PageID.543 ("my overall financial standing is stressing me out.").) So—without knowing more about why the dispute comment remaining on his credit report stresses Morgan out—it appears that most of the evidence shows that Morgan is stressed about his credit report generally, and not about the dispute comment specifically. And of course, only the dispute comment is at issue here and attributable to LVNV.

This leads the Court to a broader point. In his motion, Morgan cites his own testimony in support of showing that "Defendant's violations of the FDCPA and MOC caused damages to Plaintiff." (ECF No. 45, PageID.422.) But none of this testimony actually shows that Morgan suffered an injury that is fairly traceable to LVNV. Morgan's testimony that "everything that's listed on the credit report has played a role in my not being able to obtain certain loans" does not show that LVNV caused him to be rejected for certain loans as Morgan has not shown that LVNV is responsible for "everything that's listed on the credit report." (*See* ECF No. 45-7, PageID.701.) Indeed, according to Morgan, LVNV is only responsible for failing to remove a dispute remark, and Morgan has not shown that any creditor refused to give him a loan because he had a dispute remark. Likewise, Morgan's testimony that he has suffered losses from "not being able to put money back into my business now that the pandemic has subsided" (ECF No. 45-7, PageID.746) has not been connected to LVNV's conduct in any way. The Court is unaware how removal of a dispute comment would result in Morgan having more money to invest in his business. And

to the extent he is referencing an inability to be approved for loans for his business, the record before the Court contains no evidence of Morgan being rejected for such loans based on the dispute comment rather than his credit score. (ECF No. 45-7, PageID.547–548 (discussing completing a verbal application with his credit union for a loan and being denied but having never "received [a] letter of explanation" as to why); *id.* at PageID551 (Morgan stating he is "not sure" the credit union looked at his credit score); *id.* at PageID.678–680 (discussing being denied a loan by East Line Lending "based upon my credit report.").)

In short, for purposes of establishing traceability, it is not sufficient for Morgan to state he was denied for some loans and that he believes the denials were based on his credit report in general. He must do more to show that the dispute remark—the only part of Morgan's credit score he has shown could be attributed to LVNV—somehow caused other issues on his credit report or were the likely basis of the denials. *Cf. Hammoud v. Equifax Info. Servs., LLC*, 52 F.4th 669, 674 (6th Cir. 2022) ("Viewing the facts in the light most favorable to Ahmed, his cognizable injury was fairly traceable to Experian's actions. The record reveals SettlementOne/Mortgage Center *knew* Ahmed's credit report showed "two chapter 7 [bankruptcies] within 8 years, and we know Experian *furnished a consumer report* to SettlementOne/Mortgage Center around that time. And we also know the spurious bankruptcy was not removed from Ahmed's file until after SettlementOne/Mortgage Center made the inquiry. . . . Even though a different result might have ensued on this evidence at trial, we believe that Ahmed at least survived Experian's

jurisdictional objection at summary judgment." (internal citations omitted) (emphasis added)). Having failed to make that connection, the Court finds that Morgan has also not shown that his injuries are fairly traceable to LVNV's conduct.

* * *

In sum, Morgan has not shown he suffered a concrete injury or that his injuries are fairly traceable to LVNV's conduct. He therefore does not have standing to bring his FDCPA claim, and the Court lacks subject-matter jurisdiction over that claim. So the Court dismisses Morgan's FDCPA claim.

**II.**

And because the Court dismisses the only federal claim in this litigation, it also declines supplemental jurisdiction over the remaining state law claims. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) (stating that "28 U.S.C. § 1367(c)(3) . . . provides that a district court 'may' (rather than must) decline to exercise jurisdiction if 'the district court has dismissed all claims over which it has original jurisdiction'" and noting that "[a]s a rule of thumb . . . . when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims" (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).

**III.**

For the foregoing reasons, the Court finds that Morgan lacks standing to bring his FDCPA claim. And the Court declines to exercise supplemental jurisdiction over

the remaining state-law claims. Accordingly, the Court GRANTS IN PART LVNV's motion for summary judgment (ECF No. 46) and DENIES Morgan's motion for summary judgment (ECF No. 45).

The Court also declines to strike Morgan's affidavit as requested by LVNV and finds LVNV's remaining requests to strike moot. So LVNV's motion to strike (ECF No. 50) is DENIED.

A separate judgment will be issued.

SO ORDERED.

Dated: September 7, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE